510 S.E.2d 722

Scott W. HENGGELER, Appellant,

v.

Cindy L. HANSON, Respondent.

No. 2912.

Court of Appeals of South Carolina.

Heard Nov. 4, 1998.

Decided Dec. 14, 1998.

Rehearing Denied Feb. 27, 1999.

600

Susan King Dunn; Ann Francis Bleecker, of Wendt & Bleecker, of Charleston; C. Dixon Lee, III, and James L. McLaren, both of McLaren & Lee, of Columbia, for appellant.

Steven A. James, of Mt. Pleasant; and Stephen P. Groves, Sr., of Young, Clement, Rivers & Tisdale, of Charleston, for respondent.

Richard C. Bell, of Charleston, Guardian Ad Litem.

PER CURIAM:

This is an appeal from a family court order denying Scott W. Henggeler's request for a change of custody. We affirm.

## FACTS

Henggeler and Cindy L. Hanson married August 21, 1982. They have two children, both adopted as infants and both of Korean ancestry. Their daughter Lee was born October 31, 1986 and their son Jay was born June 23, 1990. In 1992 the family moved to Charleston and both parties became faculty members with the Department of Psychiatry at MUSC.

On March 29, 1994 Henggeler and Hanson were granted a divorce based on Henggeler's adultery. The parties entered

into an agreement which was incorporated into the divorce decree. The parties agreed to share joint custody of the children with Hanson having primary custody and Henggeler having secondary custody. The agreement also stated:

All major decisions concerning the children shall be made by both parents together whenever possible. If, however, the parties are unable to reach an agreement, the Mother, as primary custodian, shall have the authority to make necessary decisions on behalf of the children. *The wife's authority in this respect includes the authority to make a unilateral decision to relocate the children out of state, if necessary.* The parties acknowledge the wife's lack of job security in her present position at the Medical University of South Carolina and acknowledge that if she loses her position at the Medical University, her search for other reasonable employment which is compatible with her skills and experience might take her out of the state. While the husband does not waive his right to seek sole custody of the children in the event the wife determines it necessary for her to relocate with the children out of state, the Husband agrees that he will not seek a court order prohibiting the wife from moving with the children on a temporary basis but his recourse would be to seek a change of custody at a final hearing on the merits.

(Emphasis added.)

On June 30, 1996 grant money funding Hanson's position at MUSC ran out and her position was terminated. Unable to locate comparable employment in Charleston, Hanson accepted a tenured position at the University of Central Florida in Orlando.

Henggeler sued Hanson requesting a change of custody. After a lengthy hearing, the family court left custody the same—the parties sharing joint custody and Hanson having primary custody. The court ordered Henggeler to pay Hanson's attorney fees and costs of $35,000.

## SCOPE OF REVIEW

On appeal from the family court, this court has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence.

*Epperly v. Epperly*, 312 S.C. 411, 440 S.E.2d 884 (1994). We are not, however, required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981). Further, this broad scope of review does not relieve the appellant of the burden of convincing this court that the family court committed error. *Skinner v. King*, 272 S.C. 520, 252 S.E.2d 891 (1979). Because the appellate court lacks the opportunity for direct observation of the witnesses, it should accord great deference to trial court findings where matters of credibility are involved. *See Aiken County Dep't of Social Servs. v. Wilcox*, 304 S.C. 90, 403 S.E.2d 142 (Ct.App.1991). This is especially true in cases involving the welfare and best interests of children. *Id.*

## DISCUSSION

## I. CUSTODY

On appeal, Henggeler argues the family court erred in failing to award him custody and specifically in considering the children's national origin, in finding the divorce agreement contemplated Hanson's move out of state, and in failing to consider a presumption against out of state removal. We disagree.

 In order for a court to grant a change of custody, the party seeking the change must meet the burden of showing changed circumstances occurring subsequent to the entry of the order in question. *Baer v. Baer*, 282 S.C. 362, 318 S.E.2d 582 (Ct.App.1984). "A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the child will be served by the change." *Skinner*, 272 S.C. at 523, 252 S.E.2d at 892–93. Custody decisions are matters left largely to the discretion of the trial court. *Stroman v. Williams*, 291 S.C. 376, 353 S.E.2d 704 (Ct.App.1987).

### A. National Origin

██ Henggeler argues the court erroneously and unconstitutionally considered the children's Korean ancestry in denying him primary custody. We disagree.

In the final order, the court found Hanson was "mindful of the delicate issue of the children's Korean heritage and their need for diversity in their environment," but found Henggeler "seems to be oblivious to [the children's Korean heritage] and in fact seems to deny its existence." The paragraph mentioning the children's Korean heritage was deleted, however, from the amended final order.

The family court order noted Hanson displayed sensitivity to the children's need to develop an understanding of their Korean heritage and sought to provide a culturally diverse environment for them. In this context, a parent's sensitivity to a child's ethnic heritage may be a factor that has an impact on the child's best interest. This is distinguishable from a case where the court's decision to change custody from the mother to the father was based solely on the mother's decision to marry an African–American man. *See Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984).

While the court mentioned this aspect of Hanson's interaction with her children, it also considered numerous other factors such as: (1) Hanson was the children's primary care giver since their infancy; (2) a change in custody would completely isolate the children from Hanson; (3) Hanson made every effort to integrate Henggeler into the children's lives; (4) remaining with Hanson would be least disruptive to the children; (5) Hanson placed high priority on choosing quality schools and after school care for the children; and (6) Hanson was solely responsible for the children's moral upbringing.

After a thorough review of the voluminous record, it is evident the children's cultural heritage was just one of many factors considered by the trial judge. In our view, Henggeler overstates the importance of this factor in the family court's final determination that custody of the children should remain with Hanson. We do not find the family court improperly awarded custody on the basis of race or erred in denying Henggeler's request for custody on that basis.

### B. Divorce Decree

■ Henggeler next argues the divorce decree did not anticipate Hanson's move out of state. We disagree. In child custody cases, the circumstances warranting a change in custody must occur after the date of the original custody order.

*See Routh v. Routh,* 328 S.C. 512, 492 S.E.2d 415 (Ct.App. 1997); *Sealy v. Sealy,* 295 S.C. 281, 368 S.E.2d 85 (Ct.App. 1988). The March 29, 1994 divorce decree specifically incorporated and approved the March 18, 1994 separation and custody agreement.

The clear language of the agreement indicates Henggeler and Hanson anticipated Hanson's lack of job security might require her to move out of state. We find Henggeler's argument the move was not anticipated is without merit. We note, however, that Henggeler did not waive his right to bring an action for change of custody if Hanson moved out of state but merely agreed not to seek an emergency order preventing Hanson from leaving the state with the children.

### C. Presumption Against Removal

Thirdly, Henggeler argues the family court failed to consider the presumption against removal. We disagree. Since the South Carolina Supreme Court decision in *McAlister v. Patterson,* 278 S.C. 481, 299 S.E.2d 322 (1982), courts have applied the presumption against removal cautiously. *See Sealy,* 295 S.C. at 284, 368 S.E.2d at 87 (Ct.App.1992). Furthermore, a parent may not be denied custody solely on the basis of a move to another state. *Id.*

In the instant case, we find Hanson's decision to relocate to Florida was based on legitimate and non-vindictive reasons. We agree with the family court that Hanson made every effort to obtain suitable comparable employment in South Carolina. After Hanson received her letter of termination, she was unable to obtain a permanent position with MUSC. In contrast, the position in Florida is a tenured faculty position. Under these circumstances, and coupled with the acknowledgment in the original agreement that Hanson may have to move out of state, we find that the presumption against removal, if applicable at all in this case, does not justify a change of custody.

## II. ATTORNEY FEES & COSTS

Henggeler lastly argues the family court erred in awarding Hanson $35,000 in attorney fees and costs. We disagree.

An award of attorney fees will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson,* 295

S.C. 412, 415, 368 S.E.2d 901, 903 (1988). In awarding attorney fees, the court should consider the parties' ability to pay their own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining the amount of attorney fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

■ The family court judge considered the necessary factors in making her award. In addition, Hanson's attorney filed an affidavit with the family court stating that Hanson's attorney fees and costs totaled $48,622.36. In light of the affidavit and evidence that the judge considered the appropriate factors, we conclude the judge did not abuse her discretion in awarding Hanson attorney fees and costs.

For the foregoing reasons, the judgment of the family court is

**AFFIRMED.**

HOWELL, C.J., ANDERSON and STILWELL, JJ., concur.