694 S.E.2d 47

**Donna Yeargin FARMER, Respondent,**

v.

**Thomas Michael FARMER, Appellant.**

**No. 4682.**

Court of Appeals of South Carolina.

Heard Feb. 10, 2010.
Decided May 3, 2010.
Rehearing Denied June 24, 2010.

J. Falkner Wilkes, of Greenville, for Appellant.

Jonathan Kirk Fisher, of Greenville, for Respondent.

LOCKEMY, J.

Thomas Michael Farmer (Husband) appeals from an order of the family court granting him and Donna Yeargin Farmer (Wife) a divorce on grounds of one year's continuous separation. On appeal, Husband argues the family court erred in finding certain payments he received from his employer to be marital property and subject to equitable division. Additionally, Husband maintains the family court erred in ordering he pay Wife attorney's fees and costs. We affirm.

## FACTS

Husband and Wife were married in 1984, and had one child as a result of the marriage who was emancipated at the time of the divorce. The parties originally brought the divorce action in 2004, but it was dismissed. Subsequently, the parties reinitiated the divorce action in 2007. Because the parties had reached a settlement regarding the division of marital assets and debt in a stipulation of mediation, the only issues

before the family court were a single asset, which the family court refers to as the "fruits of the Management Agreement between [Husband] and CHM Homes, Inc. dated July 27, 1992" and attorney's fees and costs.

The family court granted both parties a divorce on grounds of one year's continuous separation. The family court also approved the stipulation of mediation agreement, finding the parties entered into it freely and voluntarily. In regards to the Management Agreement between Husband and CHM Homes, the family court found he entered into the Management Agreement in 1992—eight years into the parties' marriage. Additionally, the family court found Husband and CHM Homes terminated their employment arrangement on December 3, 2004.[1] Ultimately, the family court found Husband was the primary source of income for the marriage. Accordingly, the family court found the assets Husband received from the Management Agreement were marital property and equally divided them between the parties. After equally dividing the assets and subtracting money Husband already paid Wife from the total, the family court determined Husband owed Wife $361,060. Further, the family court awarded Wife $9,416.25 in attorney's fees and $8,000 in costs. Thereafter, Husband filed a motion for reconsideration which the family court denied. This appeal followed.

## ISSUES

1. Did the family court err by including the proceeds Husband received in a severance package as part of the marital estate and subject to equitable division?
2. Did the family court err in awarding Wife attorney's fees and costs?

## STANDARD OF REVIEW

■■■■■ "On appeal from the family court, this court has jurisdiction to correct errors of law and find facts in accor-

---

1. Specifically, Husband and CHM Homes entered into the Termination Agreement on December 3, 2004. However, the Termination Agreement states: "The Management Agreement shall be terminated, and the Venture created thereby dissolved, as of September 30, 2004." Therefore, the family court found September 30, 2004, to be the effective date of the Termination Agreement.

dance with its own view of the preponderance of the evidence." *Henggeler v. Hanson,* 333 S.C. 598, 601–02, 510 S.E.2d 722, 724 (Ct.App.1998). Although this court may find facts in accordance with our own view of the preponderance of the evidence, we are not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Marquez v. Caudill,* 376 S.C. 229, 239, 656 S.E.2d 737, 742 (2008). "The division of marital property is within the sound discretion of the family court, and on appeal, it will not be disturbed absent an abuse of discretion." *See Simpson v. Simpson,* 377 S.C. 527, 533, 660 S.E.2d 278, 282 (2008). The decision to award attorney's fees is also within the family court's discretion and will not be disturbed absent an abuse of discretion. *Id.* at 538, 660 S.E.2d at 284.

## LAW/ANALYSIS

### I. Non–Compete Clause and Termination Agreement Payments

Husband argues the family court erred by including the money he received from the Termination Agreement as part of the marital estate, thereby making it subject to equitable division. Husband maintains he received funds pursuant to the Management Agreement he entered into with CHM Homes which were intended to provide him future income he would have otherwise obtained through competing employment. To support his argument, Husband cites to *Ellerbe v. Ellerbe,* 323 S.C. 283, 292–93, 473 S.E.2d 881, 886–87 (Ct.App. 1996), where this court classified a non-compete agreement as non-marital property. Additionally, Husband cites *McElveen v. McElveen,* 332 S.C. 583, 506 S.E.2d 1 (Ct.App.1998), *modified on other grounds by, Wooten v. Wooten,* 364 S.C. 532, 615 S.E.2d 98 (2005), for the proposition. As such, Husband argues the money he received from the Management Agreement—where value is attributable to a non-compete agreement or intended to be a substitute for future income—should not be characterized as marital property either.

In response, Wife argues the money Husband received from the Termination Agreement was not for an agreement not to compete but rather was for the "princip[al] payments

and property appreciation on the venture." Further, Wife maintains Husband's contention that the non-compete clause allowed Husband to continue to receive money past the termination of his employment and that the payments were to replace the loss of future earnings is simply unsupported by the plain language in the contract. After examining the 1992 Management Agreement and the 2004 Termination Agreement, we agree with Wife.

In 1992, Husband and CHM Homes entered into a Management Agreement. Pursuant to the Management Agreement, Husband agreed to "refrain from any business activities which would compete with" CHM Homes. No time frame was included in the non-compete clause. A detailed description of what would happen in the event of dissolution was included in the Management Agreement. Upon dissolution, the manager would receive the fair market value of his interest, to be evaluated by the advisory board. Husband worked for CHM Homes for twenty-three years pursuant to this Management Agreement.

Thereafter, Husband and CHM Homes entered into an "Agreement for Termination of Quasi–Partnership" (Termination Agreement) because the parties desired "to effect a termination of the Management Agreement and any and all obligations and relationships created thereby." Pursuant to the Termination Agreement, CHM Homes agreed to pay Husband $771,992.87 "(comprised of $21,992.87 previously given by [Husband] to the Venture in the form of 'Loan Back' as defined in the Management Agreement plus $750,000 owed to [Husband] *for principal payments and property appreciation on Venture* )." (emphasis added). The Termination Agreement reiterated the purpose of the payments *as consideration for principal payments on note for Venture property and property appreciation.*" (emphasis added). Both parties agreed to:

> Release, discharge, and hold harmless all other parties to this Termination Agreement from any and all claims, damages, and expenses whatsoever, whether now existing or hereafter arising, relating to the Management Agreement, the Venture or any Loan Backs, employment, compensation, bonuses, assets, or other benefits which may be associated therewith.

Additionally, Husband waived all rights to any future income from the Venture's finance income for which CHM Homes assumed responsibility for any losses on the loan portfolio.

Based on the language in the Termination Agreement, we agree with Wife and believe the money Husband received from the Termination Agreement was part of the marital estate and subject to equitable division by the family court. As Wife points out, the purpose of the Termination Agreement, as is expressly stated twice, was to compensate Husband for his contributions to the business venture and appreciation of business assets. Nowhere in the Termination Agreement does it state its purpose is to compensate Husband for future income or pay him for his promise to not compete with CHM Housing. Furthermore, we believe there was only one covenant not to compete which was part of the original Management Agreement and is no longer in effect. Accordingly, we agree with the family court's characterization of the "fruits of the [T]ermination [A]greement" as being marital property because Husband's contributions to the Venture, and the Venture's appreciation occurred while the parties were still lawfully married. *See* S.C.Code Ann. § 20–3–630 (Supp. 2009) (defining "marital property" as real or personal property acquired by the parties during the marriage). Additionally, we see no reason to disturb the family court's equitable division of the money because of the wide discretion given to the family court on these matters. *See Greene v. Greene,* 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002) ("The statute grants the family court discretion to decide what weight to assign various factors."). Accordingly, we affirm the family court's decision.

## II. Attorney's Fees and Costs

██ Husband maintains the family court erred in ordering Husband to pay Wife $9,416.25 in attorney's fees and $8,000.00 in costs. Specifically, Husband argues the family court failed to set forth specific findings of fact and conclusions of law to satisfy Rule 26(a) of the Family Court Rules. Further, Husband maintains the record does not contain sufficient facts to support such an award. Wife maintains the family court did not err in its award of attorney's fees. Further, Wife argues the family court exercised proper discretion in awarding both

attorney's fees and the fee for her expert. We agree with Wife.

Section 20–3–130(H) of the South Carolina Code (Supp.2009) authorizes the family court to order payment of litigation expenses to either party in a divorce action. An award of attorney's fees rests within the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. *Doe v. Doe,* 319 S.C. 151, 157, 459 S.E.2d 892, 896 (Ct.App.1995). The family court is given broad discretion in this area. *See id.* The same considerations that apply to awarding attorney's fees also apply to awarding litigation expenses. *See Nienow v. Nienow,* 268 S.C. 161, 173, 232 S.E.2d 504, 510 (1977).

■■ A family court should *first* consider the following factors as set forth in *E.D.M. v. T.A.M.,* in deciding *whether* to award attorney's fees and costs: (1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fee on each party's standard of living. 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992); *see also Glasscock v. Glasscock,* 304 S.C. 158, 161 n. 1, 403 S.E.2d 313, 315 n. 1 (1991). After deciding to award attorney's fees, a family court should then consider the following factors as set forth in *Glasscock* in deciding *how much* to award in attorney's fees and costs: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. 304 S.C. at 161, 403 S.E.2d at 315; *see also Feldman v. Feldman,* 380 S.C. 538, 546–47, 670 S.E.2d 669, 673 (Ct.App.2008).

Although the family court did not delineate its consideration of the *E.D.M.* factors, by our own preponderance of the evidence, we find awarding attorney's fees was proper. *See Henggeler v. Hanson,* 333 S.C. 598, 601–02, 510 S.E.2d 722, 724 (Ct.App.1998) ("On appeal from the family court, this court has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence."). We affirm the decision, especially in light of Wife's beneficial results and the likelihood that she initiated

litigation in the first place in order to receive her portion of Husband's business venture. The family court noted the *Glasscock* factors in its order and thoroughly detailed its calculation of attorney's fees. Therefore, considering the *E.D.M.* factors under our view of the preponderance of the evidence and the family court's consideration of the *Glasscock* factors, we do not believe the family court abused its discretion in awarding Wife attorney's fees. Furthermore, we find Wife's expert assisted her in obtaining beneficial results and do not believe the family court abused its discretion in awarding costs for the expert. Accordingly, we affirm the family court's decision to award attorney's fees and costs as well as the amount awarded.

## CONCLUSION

We affirm the family court's decision to classify the money Husband received as a result of his Termination Agreement as marital property and find the family court exercised proper discretion in equitably dividing said property. Additionally, we find the family court exercised proper discretion in awarding attorney's fees and costs. Accordingly, the decision of the family court is

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.