699 S.E.2d 708

**Jill A. MARCHANT, Appellant,**

v.

**Leslie C. MARCHANT, Respondent.**

**No. 4734.**

Court of Appeals of South Carolina.

Heard May 20, 2010.
Decided Sept. 1, 2010.

2

Katherine Carruth Goode, of Winnsboro; Sheila McNair Robinson, of West Columbia, for Appellant.

Jean Perrin Derrick, of Lexington, for Respondent.

KONDUROS, J.

Jill Marchant (Wife) appeals the family court's failure to impute income to Leslie Marchant (Husband) in this divorce action based on theories of voluntary underemployment and the receipt of loans from his employer. Wife also contends

the provision of a vehicle and residence to Husband by his employer constituted income. Additionally, Wife appeals the family court's imputation of income to her and the resulting impact of these decisions on the family court's award of alimony and child support. She also appeals the amount of the family court's attorney's fees award. We affirm as modified.

## FACTS

Husband and Wife married in 1993. Approximately six weeks into the marriage, Wife discovered Husband had been unfaithful to her in the months immediately preceding their wedding. The couple stayed together and their first child was born in 1994. The parties did not have sexual relations with one another from that time until 2001 when, after Husband's admitted extramarital affair, Wife agreed to have a sexual relationship with him again. The parties' second child was born in 2002, and at that time Wife maintains she was willing to participate in a sexual relationship with Husband, but Husband rejected her.[1] Wife eventually moved into another bedroom and testified this arrangement allowed her to better care for their youngest child, who suffered from esophageal reflux, without disturbing Husband's rest.

In 2004, Wife suspected Husband was having an ongoing adulterous relationship, and a private investigator confirmed her suspicions. Wife filed for divorce. By agreement she had custody of both children, and Husband paid her $662.50 per month in child support and $662.50 per month in alimony.[2] The older child eventually went to live with Husband by agreement of the parties, and Husband's child support obligation was reduced to $275 per month.

At the time of trial, the parties had resolved many issues but asked the family court to determine alimony and child support. Wife alleged Husband received considerably more income than he reported on his disclosure statement. She

1. Husband admits not having sex with Wife by his choice during both pregnancies.

2. Husband testified Wife told him at the time they separated she would be going back to work and he believed after that time his alimony obligation would cease.

maintained Husband had received $27,000 from his employer and intimated he was underemployed. Husband claimed these amounts were loans from his employer that he would have to pay back. Additionally, Wife contended Husband should be charged with income as a result of his employer providing him a truck and a place to live. Husband testified the truck was the property of his employer but his employer did allow him to use it personally as well because his former truck was unsafe for transporting his children. Husband valued his use of the truck at $300 per month. Husband further indicated the company was paying rent temporarily on a property located beside the business and allowing him and the oldest child to live there in exchange for making improvements to the property.

Husband argued Wife was underemployed. Wife was not working at the time of the final hearing. She took the civil service exam after the parties separated, but did not pursue employment based on the exam. Wife earned a degree in journalism from the University of South Carolina in 1986 and obtained her teaching certificate shortly thereafter. However, Wife never used her teaching certificate and was primarily, by agreement of the parties, a stay-at-home mother. She did work intermittently for her father's law practice as a receptionist, in a daycare, and at the produce business Husband started with his cousin. Wife testified she had been taking prerequisite courses at an area college and would enter the two-year radiology program in the fall. According to Wife, she would be attending school full-time and students are discouraged from working outside of their studies and clinical work. The school would guarantee her placement, and her projected income would be somewhere between $30,000 and $40,000.

The family court did not impute income to Husband based on the loans from his employer and did not treat Husband's employer-provided residence or vehicle as income except to value the use of the company truck at $300 per month. Additionally, the family court imputed income to Wife in the amount of $1,732 per month. Based on these incomes, the family court ordered Husband to pay Wife $375 in alimony and $108 in child support per month. The family court also

ordered Husband to pay $2,000 of Wife's $12,000 attorney's fees. This appeal followed.

## STANDARD OF REVIEW

While the appellate court may take its own view of the preponderance of the evidence in family law issues, "[q]uestions concerning alimony rest within the sound discretion of the family court judge whose conclusion will not be disturbed absent a showing of abuse of discretion." *Degenhart v. Burriss*, 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct.App.2004). Questions concerning child support are likewise ordinarily committed to the discretion of the family court. *Blackwell v. Fulgum*, 375 S.C. 337, 347, 652 S.E.2d 427, 432 (Ct.App.2007). The family court also has discretion in determining attorney's fees to be awarded. *Eason v. Eason*, 384 S.C. 473, 481, 682 S.E.2d 804, 808 (2009).

## I. Husband's Income

Wife claims the family court erred in failing to find Husband was voluntarily underemployed and impute income to him based upon loans, a truck, and a residence provided by his employer. We disagree.

While Wife alluded to the fact Husband was capable of earning more, she did not request a finding that Husband was voluntarily underemployed. The testimony regarding his past income was elicited primarily to aid in establishing the parties' standard of living during the marriage. Furthermore, the family court did not rule on this point. Consequently, Wife was required to file a Rule 59(e), SCRCP, motion to seek a ruling on this point, and she failed to do so. A point not raised to and ruled upon by the family court will not be considered on appeal. *Smith v. Smith*, 386 S.C. 251, 273, 687 S.E.2d 720, 732 (Ct.App.2009); *Feldman v. Feldman*, 380 S.C. 538, 545, 670 S.E.2d 669, 672 (Ct.App.2008) (finding issue of whether Wife's and Boyfriend's relationship was tantamount to marriage not preserved for appellate review when issue was not ruled upon and Husband failed to make a Rule 59(e) SCRCP, motion).

■ Wife also claims the family court erred in not including $27,000 from Husband's company and the use of a company car and home in Husband's income. Husband admitted to receiving pay advances or loans from his employer to aid in his paying his child support and alimony obligations during the *pendente lite* stage of this proceeding. He testified there were no formal documents associated with the loans but he was nevertheless obligated to repay them based on a hand-shake deal with his partners. The employer's records show when advances were made and in what amount. The family court believed Husband's explanation for the additional funds, and we give deference to its findings on credibility. *See Terwilliger v. Terwilliger*, 298 S.C. 144, 147, 378 S.E.2d 609, 611 (Ct.App.1989) ("Resolving questions of credibility is a function of the family court judge who heard the testimony."). Under these circumstances, we conclude the family court did not abuse its discretion in failing to impute the loans to Husband as income.

■ With respect to the allowance for a company truck, Husband declared a benefit in the amount of $300 per month for use of the vehicle. Declaring the use of the company truck as income is appropriate in accordance with the South Carolina Child Support Guidelines (the Guidelines). "[T]he court should count as income expense reimbursements or in-kind payments received by a parent from self-employment or operation of a business if they are significant and reduce personal living expenses, such as a company car, free housing, or reimbursed meals." *Mobley v. Mobley*, 309 S.C. 134, 139, 420 S.E.2d 506, 510 (Ct.App.1992) (quoting S.C.Code Ann. Regs. 114–4720(A)(3)(C) (Supp.2009)).

The payment for the vehicle is $596 per month, with the business paying property taxes and insurance on the vehicle as well. According to Husband's testimony, the truck was not his property and was not solely for his use. However, it appears the truck was primarily for Husband's business and personal use. Nevertheless, at the conclusion of the term of the loan for the truck, the truck will belong to the company, not Husband. Additionally, while Husband was the primary user of the truck, the truck was occasionally utilized by the other members of the company. Consequently, we find support in the record for declaring a benefit to Husband less than

the full amount of the truck's monthly payment and therefore discern no abuse of discretion.

■ Concerning his employer-provided housing, Husband's testimony revealed he was occupying a rental property being paid for by the company and was making improvements to the property while living there for six months.[3] The property was located next door to the business and according to Husband would eventually be purchased by the company. Husband also testified he would start making monthly rental payments of $800 the following month.

While this arrangement is somewhat suspect, questions of credibility are left to the discretion of the family court. *See Terwilliger,* 298 S.C. at 147, 378 S.E.2d at 611. If this situation were to continue, an analysis of whether it constitutes in-kind income would be required. However, because Husband testified he would begin paying rent, we again discern no abuse of discretion in the family court's decision not to impute the provision of the residence as income.

## II. Wife's Income

■ Wife argues the family court erred in imputing income to her based on a wage of ten dollars per hour and a forty-hour work week. We agree in part and modify the family court's award to reflect our view of the preponderance of the evidence presented in the record.

■ "Whether termed voluntary underemployment, imputation of income, or the failure to reach earning potential, the case law is clear that when a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider the payor spouse's earning capacity." *Gartside v. Gartside,* 383 S.C. 35, 44, 677 S.E.2d 621, 626 (Ct.App. 2009). Likewise, it is proper to consider a supported spouse's earning capacity and impute income to a spouse who is underemployed or unemployed. *See Patel v. Patel,* 359 S.C. 515, 532, 599 S.E.2d 114, 123 (2004) (affirming the family court's imputing minimum wage income to Wife, who had been

3. The improvements were financed through loans or advances from the company, but Husband was apparently responsible for overseeing the work.

out of the workforce for twenty years but was capable and energetic). "However, courts are reluctant to invade a party's freedom to pursue the employment path of their own choosing or impose unreasonable demands upon parties." *Kelley v. Kelley*, 324 S.C. 481, 489, 477 S.E.2d 727, 731 (Ct.App.1996). "Nonetheless, even otherwise unreviewable career choices are at times outweighed by countervailing considerations, particularly child support obligations." *Id.*

In this case, the evidence adduced at trial indicated Wife had worked sporadically and infrequently during the marriage. She had worked in her father's office, as a day-care worker, and in her Husband's company, all for a brief time. Wife was by-and-large a stay-at-home mother as agreed upon by the parties.[4] She had obtained her bachelor's degree in journalism and her teaching certificate prior to the marriage but had never used it. According to Husband's vocational rehabilitation expert, Wife was capable of earning a gross income of around $28,000 per year with minimal additional training if she were willing to work in the field of education.[5] However, Wife indicated she had no desire to teach and instead hoped to obtain a degree in radiology, in which she would be guaranteed job placement.

The family court did not impute income to Wife that would be the equivalent of a teacher's salary, so that particular point is not before this court. Instead, the family court imputed a lower amount to mother of approximately four hundred dollars per week. This figure came from using a forty-hour work week and the ten dollars per hour Wife earned while working at her father's law firm. The figures were based on the family court's determination that Wife had not displayed a pattern indicating she would complete her radiology degree.

We believe the family court abused its discretion in imputing this level of income to Wife. According to the Guidelines,

---

4. Husband testified he had asked Wife to seek employment in the latter years of their marriage.

5. Wife would need to take six credit hours of classes and pass the Praxis examination to obtain a current teaching certificate. We also note that securing a teaching job in the current economic climate with no experience is less than a certainty.

"[i]n order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earnings level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community." S.C.Code Ann. Regs. 114–4720(A)(5)(B) (Supp. 2009). The family court imputed income to Wife based on a full-time job earning ten dollars per hour and at the same time was encouraging Wife to complete her radiology program. Wife had custody of the parties' younger child and testified her radiology coursework would require her to attend school full time. Furthermore, Wife had no real recent work experience and her prior employment had been primarily working for family. Considering Wife's parental and educational commitments and her lack of recent work experience, the family court imputed too much income to Wife.

Recognizing Wife had shown a lack of initiative in finding any employment, we affirm the family court's imputation of income based on a forty-hour work week, but at the rate of $5.85 per hour, the minimum wage at the time of the family court hearing. This results in Wife having imputed income of $1,014 per month.

### III. Child Support/Children's Health Expenses

Wife argues the family court's computation of child support was erroneous in light of the parties' true incomes. We agree. Based on our modification of Wife's income, we adjust Father's child support obligation to $171 per month. This figure is proper pursuant to the Guidelines substituting Wife's new income of $1,014 in the calculation.

### IV. Alimony

Wife contends the family court erred in awarding her only $375 per month in alimony. Again, based on our modification of Wife's income, we agree.

Section 20–3–130(C) of the South Carolina Code (Supp. 2008) sets forth twelve factors which must be weighed when

determining alimony. In deciding whether to award alimony, the family court must consider:

(1) the duration of the marriage and the ages of the parties at the time of the marriage and at separation; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse and the need for additional education; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated income of each spouse; (7) the current and reasonably anticipated expenses of each spouse; (8) the marital and nonmarital properties of the parties; (9) the custody of any children; (10) marital misconduct or fault; (11) the tax consequences of the award; (12) the existence of support obligations to a former spouse; and (13) such other factors the court considers relevant.

*Smith v. Smith*, 386 S.C. 251, 265–66, 687 S.E.2d 720, 728 (Ct.App.2009). "The family court may weigh these factors as it deems appropriate." *Id.*

The record illustrates the family court considered the relevant factors in awarding alimony. In fact, the family court weighed the factors and gave Wife permanent, periodic alimony even though rehabilitative alimony, which was not pled, was likely more appropriate. The court noted the duration of the marriage and that both parties were in good health and capable of contributing to their own financial well-being. The court recognized Wife had custody of one child and Husband had custody of the other. The parties had little or no marital or non-martial property, and the court considered Husband's fault in the break-up of the marriage. That appears to be one of the primary reasons for the award of permanent, periodic alimony. The family court also considered the parties' lifestyle during the marriage and noted they had always spent more than they earned.

Essentially, the family court gave proper consideration to the various factors. Therefore, we find the family court abused its discretion only to the extent it based its award on imputing to Wife income of $1,732 per month. Because we

have reduced that amount, we believe she is entitled to an adjustment in her alimony award so that Husband shall now pay Wife $500 per month.

## V. Attorney's Fees

The family court ordered Husband to pay $2,000 of Wife's $12,000 attorney's fees. Wife argues on appeal the family court failed to make findings with respect to each *Glasscock*[6] factor and abused its discretion in not awarding her more attorney's fees because she does not have income to pay her fees. We disagree.

"In determining whether [or not] to award attorney's fees, the court should consider each party's ability to pay his or her own fees, the beneficial results obtained by counsel, the parties' respective financial conditions, and the effect of the fee on the parties' standard of living." *Eason v. Eason,* 384 S.C. 473, 481–82, 682 S.E.2d 804, 808 (2009) (citing *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992)). In determining the amount of attorney's fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock,* 304 S.C. at 161, 403 S.E.2d at 315.

First, the family court's failure to include specific findings as to each *Glasscock* factor does not require reversal of an attorney's fee award, as long evidence in the record supports each factor. *See Townsend v. Townsend,* 323 S.C. 309, 318, 474 S.E.2d 424, 430 (1996). In this case, the record contains Wife's attorney's fees affidavit and itemization of costs. While the affidavit could have been more specific, it does state that Wife's counsel has always had a domestic law practice and one-hundred percent of her work was in family law cases. The affidavit further notes the court is aware of

---

6. *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991).

the litigation and what has been required to handle the dispute between the parties. Furthermore, the affidavit contains the time spent on the matter and the charge per hour. The affidavit addresses counsel's standing, the fees for such services, and the time devoted to the case. The family court reviewed this information and found the fees to be "in the ballpark."

The family court found Wife's attorney had obtained beneficial results for her in getting the divorce on the grounds of adultery and securing permanent, periodic alimony for Wife. The court also remarked that neither party was really in a position to pay their attorney's fees but that Husband had a little more disposable income than Wife. While we are modifying the amount of income imputed to Wife, the adjustment is not so significant as to warrant a change in the attorney's fees award in light of the totality of the circumstances. Accordingly, the family court did not abuse its discretion in failing to award Wife more attorney's fees.

## CONCLUSION

We conclude the family court did not abuse its discretion in declining to impute additional income to Husband, and we find the issue of Husband's voluntary underemployment is not preserved for our review. With respect to Wife's income, we find the family court abused its discretion in imputing monthly income of $1,732 to Wife, and we modify that amount to $1,014. Based on the alteration to Wife's income, we likewise modify Husband's child support and alimony obligations to $171 per month and $500 per month respectively, retroactive to the date of the family court's final order. Finally, we affirm the family court's award of attorney's fees. Accordingly the judgment of the family court is

**AFFIRMED AS MODIFIED.**

GEATHERS and LOCKEMY, JJ., concur.