769 S.E.2d 442

**Jane SRIVASTAVA, Appellant,**

v.

**Ravindra SRIVASTAVA, Respondent.**

Appellate Case No. 2013–000344.

No. 5287.

Court of Appeals of South Carolina.

Heard Sept. 10, 2014.
Decided Dec. 23, 2014.
Withdrawn, Substituted and Refiled Feb. 25, 2015.

Jane Srivastava, of Hilton Head Island, Pro Se.

H. Fred Kuhn Jr., of Moss Kuhn & Fleming, P.A., of Beaufort, for Respondent.

GEATHERS, J.

In this divorce action, Jane Srivastava (Wife) appeals the family court's final order. Wife argues the family court erred by (1) failing to either impute income to Ravindra Srivastava (Husband) or deviate from the Child Support Guidelines in its child support award, (2) giving credit to Husband for excess child support payments, (3) awarding Husband attorney's fees, (4) not awarding Wife attorney's fees, (5) dividing the marital property in an inequitable manner, (6) finding Husband did not condone Wife's adultery, (7) denying Wife alimony, and (8) rendering a partial and biased decision. We affirm in part, reverse in part, and remand.

## ISSUES ON APPEAL

I.   Did the family court err by failing to either impute income to Husband or deviate from the Child Support Guidelines in its child support award?

II.  Did the family court err in giving credit to Husband for excess child support payments?

III. Did the family court err in awarding Husband attorney's fees and not awarding Wife attorney's fees?

IV.  Did the family court err in finding Husband did not condone Wife's adultery, and, thus, err in denying Wife alimony?

V.   Did the family court err in dividing the marital property in an inequitable manner?

VI.  Did the family court fail to render an impartial and nonbiased decision?

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In appeals from the family court, the appellate court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709

S.E.2d 666, 667 (2011) (citations omitted). *"De novo* review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the [family] court's findings." *Lewis,* 392 S.C. at 390, 709 S.E.2d at 654–55. However, this broad scope of review does not require the appellate court to disregard the factual findings of the family court or ignore the fact that the family court was in a better position to assess the credibility of the witnesses. *Pinckney v. Warren,* 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001). Moreover, the appellant is not relieved of the burden of convincing this court that the family court erred in its findings. *Id.* at 387–88, 544 S.E.2d at 623. Accordingly, we will affirm the decision of the family court unless its decision is controlled by some error of law or the appellant satisfies the burden of showing that the preponderance of the evidence actually supports contrary factual findings by this court. *See Lewis,* 392 S.C. at 390–91, 709 S.E.2d at 654–55.

## LAW/ANALYSIS

Wife argues the family court erred in its final order for several reasons. We address each issue in turn.

## I. Did the family court err by failing to either impute income to Husband or deviate from the Child Support Guidelines in its child support award?

Wife argues the family court erred in its child support determination by failing to (a) impute income to Husband, or (b) deviate from the Child Support Guidelines to award a larger sum of child support. Husband asserts these arguments are not preserved. We agree with Husband.

"To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [family] court." *Doe v. Doe,* 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct.App.2006). "Therefore, when an appellant neither raises an issue at trial nor [files] a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review." *Id.* at 212, 634 S.E.2d at 54–55.

In *Marchant v. Marchant,* the wife alluded to the fact that the husband was capable of earning more in the final hearing,

but she did not request a finding that the husband was voluntarily underemployed for the purpose of imputing income. 390 S.C. 1, 7, 699 S.E.2d 708, 711 (Ct.App.2010). Furthermore, the family court did not rule on the issue of income imputation. *Id.* This court determined that the wife was required to file a Rule 59(e) motion to seek a ruling on that point, and she failed to do so. *Id.* Because income imputation was not raised to and ruled upon by the family court, this court found the issue was unpreserved. *Id.* at 7, 699 S.E.2d at 711–12.

Likewise, here, Wife failed to raise the issues of income imputation and deviation from the Child Support Guidelines to the family court, and she never filed a Rule 59(e) motion for the family court to consider these issues. Because Wife failed to do so, these arguments are not preserved for appellate review. *See id.; Doe,* 370 S.C. at 212, 634 S.E.2d at 54–55.

## II. Did the family court err in giving credit to Husband for excess child support payments?

Wife argues the family court erred in giving credit to Husband for overpayment of child support. Husband argues this issue is unpreserved. We agree with Husband.

Similar to the first issue, Wife did not file a Rule 59(e) motion to reconsider this ruling after the family court issued its final order. Therefore, we find this issue is also unpreserved. *See, e.g., Bennett v. Rector,* 389 S.C. 274, 284, 697 S.E.2d 715, 720 (Ct.App.2010) ("When a party receives an order that grants certain relief not previously contemplated or presented to the trial court, the aggrieved party must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to preserve the issue for appeal." (quoting *In re Timmerman,* 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct.App. 1998))); *id.* (finding that when the family court made the child support award retroactive in its order, the mother needed to raise the issue in a Rule 59(e) motion to preserve her argument on appeal).

## III. Did the family court err in awarding Husband attorney's fees and not awarding Wife attorney's fees?

Wife argues the family court erred in awarding Husband attorney's fees in the amount of $50,000 because Husband

earns a substantially higher income than Wife. Wife maintains that she should have been awarded attorney's fees instead. We find the family court erred, as the evidence does not support the attorney's fees awarded to Husband.

Section 20–3–130(H) of the South Carolina Code (2014) authorizes the family court to order payment of litigation expenses to either party in a divorce action. "An award of attorney's fees rests within the sound discretion of the trial [court] and should not be disturbed on appeal absent an abuse of discretion." *Doe v. Doe,* 319 S.C. 151, 157, 459 S.E.2d 892, 896 (Ct.App.1995) (citation omitted).

In deciding *whether* to award attorney's fees and costs, a family court should first consider the following factors as set forth in *E.D.M. v. T.A.M.:* "(1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fee on each party's standard of living." *Farmer v. Farmer,* 388 S.C. 50, 57, 694 S.E.2d 47, 51 (Ct.App. 2010) (citing *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992)). Then, if the family court decides to award attorney's fees to a particular party, the family court should weigh the following factors as set forth in *Glasscock v. Glasscock* in considering *how much* to award in attorney's fees and costs: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." *Id.* (citing *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991)).

In *Rogers v. Rogers,* our supreme court found the family court's award of attorney's fees to the husband was excessive because the award represented approximately 16% of the wife's annual income. 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001). In remanding the issue of attorney's fees to the family court, the supreme court emphasized, "A party's ability to pay is an essential factor in determining whether an attorney's fee should be awarded, as are the parties' respective financial conditions and the effect of the award on each party's stan-dard of living." *Id.* (citing *Sexton v. Sexton,* 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993)).

Here, the family court generally acknowledged in its final order that it considered the four factors in *E.D.M. v. T.A.M.* in deciding whether to award attorney's fees. The family court then referenced its application of the *Glasscock* factors in determining how much to award in attorney's fees. While the family court's decision to award attorney's fees is generally within its discretion, *Doe*, 319 S.C. at 157, 459 S.E.2d at 896, we find the award of $50,000 in attorney's fees to Husband is excessive and an abuse of discretion.

As in *Rogers*, we have compared the award of attorney's fees to Wife's annual income. According to the family court's order, Wife has a gross annual income of $55,260.[1] Applying this number to the award of attorney's fees, the $50,000 award here represents approximately 90% of Wife's gross annual income.[2] And, although the family court generally referenced the *E.D.M.* factors, the income-to-attorney's fees ratio makes it apparent that the family court did not sufficiently consider each party's ability to pay, their respective financial conditions, and the effect of the award on each party's standard of living. *See Rogers*, 343 S.C. at 334, 540 S.E.2d at 842; *Sexton*, 310 S.C. at 503, 427 S.E.2d at 666 (noting a party's ability to pay is an "essential" factor in determining an award of attorney's fees); *Spreeuw v. Barker*, 385 S.C. 45, 72, 682 S.E.2d 843, 857 (Ct.App.2009) (stating this court "would be very concerned by an award of attorney's fees representing approximately 40% of [a party's] annual income").

Moreover, Husband earns a substantially higher annual income than Wife, which further illustrates the family court's failure to adequately address the *E.D.M.* factors. *Cf. Bodkin v. Bodkin*, 388 S.C. 203, 224–25, 694 S.E.2d 230, 241–42 (Ct.App.2010) (affirming the family court's attorney's fees award, in part, because the husband was in a far better financial condition to pay the wife's attorney's fees based upon

---

1. The family court's order states that Wife earns a gross monthly income of $4,605. We used this number to extrapolate her annual earnings of $55,260.

2. According to the numbers proffered by Husband in his appellate brief, Wife's average annual income between 2008 and 2011 was $73,690. Even if we used this number instead of the court's calculations, the award of attorney's fees would constitute 67.8% of Wife's annual income, which is still excessive.

their respective incomes and the effect of the award on their standard of living). Accordingly, we remand to the family court to address each of the *E.D.M.* factors with specificity in determining whether to award attorney's fees in light of the conclusions of this opinion. If the family court determines that attorney's fees should be awarded to a particular party, it should then specifically address each of the *Glasscock* factors in determining the amount of attorney's fees.

## IV. Did the family court err in finding Husband did not condone Wife's adultery, and, thus, err in finding Wife was barred from receiving alimony?

Wife argues the family court erred in finding Husband did not condone Wife's adultery. In turn, Wife contends that she should have been awarded alimony. Husband maintains that he never forgave Wife for her actions, and the family court properly found Wife's claim of condonation was not credible. We disagree with Husband. The evidence does not support the family court's finding of the absence of condonation, and, therefore, Wife is not barred from receiving alimony.

### A. Condonation

Condonation, a defense to adultery in a divorce action, "means 'forgiveness, express or implied, by one spouse for a breach of marital duty by the other. More specifically, it is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness.'" *Nemeth v. Nemeth,* 325 S.C. 480, 488, 481 S.E.2d 181, 185 (Ct.App.1997) (quoting *McLaughlin v. McLaughlin,* 244 S.C. 265, 272, 136 S.E.2d 537, 540 (1964)). "To establish condonation, there generally must be proof of reconciliation, 'which implies normal cohabitation of the husband and wife in the family home.'" *Id.* (quoting *Langston v. Langston,* 250 S.C. 363, 373, 157 S.E.2d 858, 863 (1967)). "A full resumption or continuance of marital cohabitation after the conduct complained of and with knowledge thereof, *for any considerable period of time,* quite conclusively shows an intention to forgive or condone such conduct." *McLaughlin,* 244 S.C. at 274, 136 S.E.2d at 541 (emphasis added) (internal quotation marks and citation omitted).

Once an act of adultery is condoned, a spouse cannot later revive the marital offense as a bar to paying alimony unless the other spouse repeats the offense. *See RGM v. DEM*, 306 S.C. 145, 150, 410 S.E.2d 564, 567 (1991) (stating condonation may be revoked by subsequent illicit conduct); *McLaughlin*, 244 S.C. at 275, 136 S.E.2d at 542 (same); *see also Murray v. Murray*, 271 S.C. 62, 64, 244 S.E.2d 538, 539 (1978) (finding that even if the husband's initial decision to stay in the home constituted condonation, the condonation was nullified by the wife's subsequent acts of misconduct). Moreover, a condoned act of adultery cannot be employed as a bar to paying one spouse alimony as a matter of law. *Doe v. Doe*, 286 S.C. 507, 512, 334 S.E.2d 829, 832 (Ct.App.1985).

In *McLaughlin*, after the husband committed marital misconduct (physical cruelty), our supreme court found that the wife continued living with her husband for approximately five months before the couple separated. 244 S.C. at 274, 136 S.E.2d at 541. The supreme court noted that although the relationship between the couple appeared to have been strained, the parties nevertheless continued living together under the same roof for five months. *Id.* at 274–75, 136 S.E.2d at 541–42. Therefore, the evidence of five months' continued cohabitation convinced the court that the wife condoned the husband's misconduct. *Id.; see also Doe*, 286 S.C. at 510, 334 S.E.2d at 831 (finding the marital misconduct was condoned by the husband when the couple continued to cohabitate and voluntarily engage in sexual relations for approximately five months); *Grubbs v. Grubbs*, 272 S.C. 138, 141, 249 S.E.2d 747, 749 (1978) (finding the husband's assertion that he did not learn of his wife's affair until over ten years after it occurred was "insufficient to rebut the presumption of condonation arising from the lapse of time, the cohabitation of the parties, and other related conduct by the husband"). *But see Nemeth*, 325 S.C. at 488, 481 S.E.2d at 185 (finding the evidence was insufficient to prove the husband condoned the wife's adultery by spending two nights in the home after the wife confessed her adultery when the husband testified they did not sleep together and there was no agreement to reconcile); *Murray*, 271 S.C. at 63–64, 244 S.E.2d at 539 (holding it was not condonation for the husband to remain in the marital

home on advice of counsel and for the sake of the parties' young son after the wife committed marital misconduct).

Notwithstanding continued cohabitation, our supreme court has found that the presence or lack of sexual access is also a pertinent factor in determining the existence of condonation. *See, e.g., Wilson v. Wilson,* 274 S.C. 236, 238–40, 262 S.E.2d 732, 733–34 (1980) (holding that even though the couple continued living together for three months after the husband last physically abused the wife, the family court erred in not allowing the wife to testify about the lack of sexual access for condonation purposes). Nevertheless, condonation is "primarily a state of mind," *id.* at 238, 262 S.E.2d at 733, the existence of which concerns whether the evidence shows the injured spouse forgave the offending spouse. *See McLaughlin,* 244 S.C. at 272, 136 S.E.2d at 540 ("Condonation ... means forgiveness, express or implied, *by one spouse* for a breach of marital duty *by the other.*" (emphases added)); Roy T. Stuckey, *Marital Litigation in South Carolina* 132 (4th ed.2010) (evaluating the elements of condonation and stating "[t]he primary evidentiary issue is *the fact or act of forgiveness on the part of the injured spouse* " (emphasis added)).

Here, Wife's testimony indicates that she and Husband resumed "normal cohabitation" after Wife admitted to the affair. Wife testified that after her admission, she ended the relationship with her paramour and never engaged in another extramarital relationship. She also stressed that the parties continued living together in the marital home from the time Husband learned of the affair in January 2010 until Wife moved out over a year later in March 2011—a fact that Husband does not dispute. As Wife testified—and Husband admitted—even before Wife's admission of adultery, the couple regularly slept in separate bedrooms because Husband snored and was "on call a lot" with his practice. Despite continuing to maintain separate bedrooms after Wife's admission of adultery, Wife contends the parties engaged in conjugal conveniences at least once per month from January 2010 until October 2010. As additional evidence of condonation, Wife cites an e-mail Husband sent in July 2010—*seven months* after her admission of adultery—which she claims is a clear

indication of his intent to forgive Wife and a plea to continue their marital relationship in full.[3]

Although fourteen months of cohabitation elapsed after Wife's admission of adultery, Husband insists that no "normal cohabitation" occurred because the couple never slept in the same bedroom and Wife frequently traveled away from the marital home during much of the alleged period of reconciliation. Specifically, during oral argument, Husband's counsel stressed that Wife traveled and was gone "most of the time," and, therefore, she was not "seeking condonation." Moreover, despite living together for fourteen months, Husband cites an e-mail Wife sent to Husband in August 2010—halfway through the fourteen-month cohabitation period—notifying Husband of Wife's intent to separate and file for divorce. Finally, as to intimacy between the two, Husband contradicted Wife and maintained that they only "attempted" to engage in sexual relations on one occasion after Husband learned of Wife's affair.

In the final hearing, the family court found Wife not credible and Husband credible, and, in turn, it determined Husband's testimony revealed he did not condone Wife's adultery. While matters of credibility are generally left to the discretion of the family court, *see Reiss v. Reiss*, 392 S.C. 198, 204, 708 S.E.2d 799, 802 (Ct.App.2011), the evidence here does not support the family court's determination.

As our supreme court noted in *McLaughlin*, continued cohabitation for a considerable amount of time "quite conclusively" shows condonation. 244 S.C. at 274, 136 S.E.2d at 541 (citation omitted). Here, after Wife's admission of adultery, Husband and Wife continued normal cohabitation for at least seven months until Wife expressed her desire to separate in her August 2010 e-mail to Husband. Furthermore, after this e-mail, the couple continued living together

3. Husband's e-mail states, in pertinent part,

We are going through the worst conflict in our life but as awful as it feels, it is an opportunity to revive the connection, values, love and dreams that we had together. *At no point in this turmoil ... have [I] stopped loving you or dreaming of our future together* .... I want our relationship to survive and thrive not because of kids or geography or shame of a failed marriage but because of our love and commitment to be better for each other. (emphasis added).

under the same roof for an additional seven months. Although the relationship between Husband and Wife appears to have been strained, their continued marital cohabitation for a "considerable period of time[ ] *quite conclusively shows an intention to forgive or condone such conduct." Id.* (emphasis added) (citation omitted). Moreover, Husband admitted that after he learned of Wife's affair in January 2010, he and Wife attempted marriage counseling twice to work on the marriage. Wife also testified—and Husband has not offered clear and positive proof otherwise—that she has not repeated an adulterous act after admitting to the affair.[4] *See McLaurin v. McLaurin,* 294 S.C. 132, 133, 363 S.E.2d 110, 111 (Ct.App. 1987) (stating proof of adultery must be clear and positive, and the infidelity must be established by a clear preponderance of the evidence (citation omitted)).

■ Despite Husband's testimony concerning minimal marital intimacy, the evidence of fourteen months of continued cohabitation and two counseling sessions, together with Husband's July 2010 e-mail, strongly evinces Husband's condonation of Wife's adultery. As noted, the law of condonation focuses on forgiveness from the standpoint of the injured party. *See, e.g., McLaughlin,* 244 S.C. at 272, 136 S.E.2d at 540 ("Condonation in the law of divorce means forgiveness, express or implied, *by one spouse* for a breach of marital duty *by the other."* (emphases added) (internal quotation marks and citation omitted)); Roy T. Stuckey, *Marital Litigation in*

---

4. After the parties separated, Wife admitted joining "JDate," a Jewish dating website, in late September or October of 2011. Wife revealed that she went on four different dates while the parties were separated, but insists that she only had "coffee dates" with these four men and was simply "looking for company." Husband has not offered proof that anything more than an informal "coffee meeting" occurred during these "dates." As we have stated in a previous opinion, *McElveen v. McElveen,* we decline to find the wife committed adultery because there is "virtually no evidence of a romantic or sexual relationship" between the wife and an alleged paramour. 332 S.C. 583, 598–99, 506 S.E.2d 1, 8–9 (Ct.App.1998), *disapproved of on other grounds by Wooten v. Wooten,* 364 S.C. 532, 615 S.E.2d 98 (2005). "[W]ithout evidence to support a romantic relationship, including love letters, romantic cards, handholding, hugging, kissing, or any other romantic demonstrations or actions between the wife and [the alleged] paramour, adultery [is] not adequately established." *Brown v. Brown,* 379 S.C. 271, 279, 665 S.E.2d 174, 179 (Ct.App.2008).

*South Carolina* 132 (4th ed. 2010) ("The primary evidentiary issue [when evaluating condonation] is the fact or act of forgiveness on the part of the injured spouse."). Furthermore, we reject Husband's contention that *Wife's* conduct and travels negated evidence of *Husband's* condonation under these circumstances. Wife's travels in 2010 included brief trips to Paris and Italy, and two months with the children during the summer in New York; however, Wife always returned home after these trips.

Therefore, under our view of the preponderance of the evidence, it is apparent that Husband condoned Wife's adultery, and he cannot now revive the marital offense. *See McLaughlin,* 244 S.C. at 275, 136 S.E.2d at 542 (finding one spouse may not later revoke condonation unless a subsequent and similar act of marital fault is repeated by the offending spouse). Accordingly, we proceed to the discussion of alimony.

## B. Alimony

Because the family court erred in finding Husband did not condone Wife's adultery, Wife is not barred from receiving alimony. Therefore, the family court should reconsider the issue of alimony on remand.[5] *See Doe,* 286 S.C. at 512, 334 S.E.2d at 832 (holding a condoned act of adultery cannot be employed as a bar to paying one spouse alimony as a matter of law).

▬▬▬ "Alimony is a substitute for the support normally incident to the marital relationship and should put the supported spouse in the same position, or as near as is practicable to the same position, enjoyed during the marriage." *Reiss,* 392 S.C. at 208, 708 S.E.2d at 804. "If an award of alimony is warranted[,] the family court has a duty to make an award that is fit, equitable, and just." *Id.* The family court "may grant alimony in such amounts and for such term as the [court] considers appropriate under the circumstances."

5. Because the family court found Husband did not condone Wife's adultery, it ordered Wife to repay all amounts of temporary alimony paid by Husband before the final hearing. In light of our holding, we reverse the family court as to this issue as well.

*Davis v. Davis,* 372 S.C. 64, 79, 641 S.E.2d 446, 454 (Ct.App. 2006).

■ In determining an award of alimony, the family court must consider the following factors: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital property of the parties; (9) custody of the children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) any other factors the family court considers relevant. S.C.Code Ann. § 20–3–130(C). However, "[t]he family court is only required to consider relevant factors." *King v. King,* 384 S.C. 134, 142, 681 S.E.2d 609, 613 (Ct.App. 2009).

■ After consideration of the appropriate factors, if the family court determines Wife is entitled to alimony, it "must determine what type of alimony is most likely to do justice in this case and, based upon [its] findings of fact and upon consideration of the factors in making such [an] award[ ], decree either periodic alimony, lump sum alimony or rehabilitative alimony." *Carroll v. Carroll,* 309 S.C. 22, 25, 419 S.E.2d 801, 802–03 (Ct.App.1992) (footnote omitted).

## V. Did the family court err in dividing the marital property in an inequitable manner?

Wife argues the family court erred in its equitable distribution award, particularly because the court's calculations gave excessive weight to (1) her "indiscretion," (2) the $45,360 "gift" Wife gave to her mother, and (3) the unauthorized $16,626 withdrawal from a marital account while the divorce action was pending. Wife also argues the family court failed to consider the relevant tax consequences in its award. We address Wife's arguments in turn.

First, we do not find the family court placed excessive weight on her indiscretion. There is simply no evidence in the record to support this allegation. *See Pinckney,* 344 S.C. at 387–88, 544 S.E.2d at 623 (finding the appellant in an equitable

action has the burden of convincing the appellate court that the trial court committed error).

Second, the evidence supports the family court's determination that Wife's $45,360 transfer to her mother was fraudulent and made in anticipation of divorce. The family court may alter the equitable distribution of marital property based on economic misconduct if the allegedly at-fault party engaged in "willful misconduct, bad faith, intention to dissipate marital assets, or the like." *McDavid v. McDavid,* 333 S.C. 490, 496, 511 S.E.2d 365, 368 (1999); *cf. Panhorst v. Panhorst,* 301 S.C. 100, 104–06, 390 S.E.2d 376, 378–79 (Ct.App. 1990) (finding no fraudulent intent on the husband's part in giving his mother a total of $25,000 to $30,000 *over the course of twenty years,* even without the wife's knowledge, because there was no evidence to show that the husband made the gifts with the intent to deprive the wife of her share of the marital estate).

Here, the facts show Wife transferred $45,360 from the marital estate to her mother, without Husband's knowledge, while she had an ongoing affair. Furthermore, the family court noted Wife met with a few divorce lawyers during this time, and Wife, herself, is an attorney and is knowledgeable of the law. The family court found this was evidence that she fraudulently and purposely reduced the marital estate to her advantage in contemplation of divorce. The family court's finding of economic misconduct is supported by the evidence, and, accordingly, the deduction of the amount Wife transferred to her mother from Wife's portion of the marital estate was warranted.

As to Wife's third argument, we find Wife's unauthorized $16,626 withdrawal was also properly deducted from her award. In the family court's temporary order, it authorized each party to withdraw up to $15,000 from any marital account for payment of attorney's fees and litigation costs before the final hearing. Because Wife withdrew $16,626 in excess of the authorized $15,000 limit from a marital account, the amount of the unauthorized withdrawal was properly charged against Wife's portion of the marital estate. *See* S.C.Code Ann. § 20–3–620(B)(3) (2014) (stating the court shall give weight in

apportioning marital property, among other factors, to the *depreciation* of the marital estate by one party).

■ Finally, Wife argues that the family court failed to consider the relevant tax consequences in fashioning its equitable distribution award. Wife contends the family court should have recognized the tax consequences that would follow from her need to liquidate her retirement accounts for reasonable living expenses. Because Wife did not raise this issue to the family court in the first instance, this argument is not preserved for appellate review. *Woodward v. Woodward*, 294 S.C. 210, 216, 363 S.E.2d 413, 417 (Ct.App.1987) (finding the failure to raise an objection in a post-trial motion to certain issues in the equitable distribution award or seek to obtain a ruling on those issues from the family court rendered the issues unpreserved for appellate review). In conclusion, we find the family court did not err in its equitable distribution award.[6]

## VI. Did the family court fail to render an impartial and nonbiased decision?

Wife argues the family court's final order is biased and partial to Husband. In particular, Wife alleges (1) the family court's order is contrary to the evidence, (2) the court found for Husband on all issues, (3) the court had ex-parte communications with Husband's counsel, and (4) the court had previ-

---

6. Because we have remanded for an alimony determination, we note that the equitable distribution award may affect alimony, and vice versa. *See* S.C.Code Ann. § 20-3-620(B)(9) (stating that, in apportioning marital property, the family court must give weight in such proportions as it finds appropriate to "whether separate maintenance or alimony has been awarded"); *Johnson v. Johnson,* 288 S.C. 270, 277, 341 S.E.2d 811, 815 (Ct.App.1986) ("The amount of property awarded in an equitable distribution may be an important factor in determining alimony."); *id.* at 277, 341 S.E.2d at 815–16 ("Since we are remanding the equitable distribution award for reconsideration, the alimony award should be reconsidered in light of [the wife's] portion of the property distribution determined on remand."). Moreover, the determination of attorney's fees on remand must contemplate the reversal of substantive results achieved at trial by Husband's counsel. *Sexton,* 310 S.C. at 503, 427 S.E.2d at 666 (finding beneficial results obtained by counsel is an essential factor in determining whether attorney's fees should be awarded and acknowledging that the supreme court has previously reversed the award of attorney's fees where the substantive results achieved by counsel were reversed on appeal (citations omitted)).

ously referred litigants in need of a psychiatric or addiction evaluation to Husband's practice.

■ Wife cites *Patel v. Patel* for the proposition that a family court's impartiality might reasonably be questioned when its factual findings are not supported by the record. 359 S.C. 515, 524, 599 S.E.2d 114, 118 (2004). While this is true, the family court's factual findings are not so deficient as to question the judge's impartiality in this action. "The fact [that] a [family court] judge ultimately rules against a litigant is not proof of prejudice by the judge, even if it is later held the judge committed error in his rulings." *Mallett v. Mallett,* 323 S.C. 141, 147, 473 S.E.2d 804, 808 (Ct.App.1996) (citing *Reading v. Ball,* 291 S.C. 492, 495, 354 S.E.2d 397, 399 (Ct.App.1987)). Although we have assigned error to certain issues in this appeal, we find Wife's allegations of judicial bias are without merit, and, accordingly, we have no reason to question the family court's impartiality.

## CONCLUSION

In conclusion, we hold Wife did not preserve her arguments that the family court erred by failing to either impute income to Husband or deviate from the Child Support Guidelines in its child support award. We also find unpreserved Wife's argument regarding the family court's alleged error in giving credit to Husband for excess child support payments.

As to the award of attorney's fees, we find the family court erred in awarding $50,000 to Husband, and, thus, we remand for reconsideration. As to condonation and alimony, we reverse the family court's finding that Husband did not condone Wife's adultery and, therefore, remand for reconsideration of alimony. As to the equitable distribution award, we hold the family court did not err in fashioning the award. Finally, we find Wife's allegations of bias on the part of the family court are without merit.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

WILLIAMS and McDONALD, JJ., concur.