**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Adrian A. Duclos, Appellant,

v.

Karen R. Duclos, Respondent.

Appellate Case No. 2018-002082

Appeal From Dorchester County
Jan Benature Bromell Holmes, Family Court Judge

Unpublished Opinion No. 2022-UP-306
Heard March 1, 2022 – Filed July 20, 2022

**AFFIRMED AS MODIFIED**

Thomas Ryan Phillips, of Cordell Law LLP, of Charleston, for Appellant.

Bernard F. Mack, of Ben F. Mack, of Summerville, for Respondent.

**PER CURIAM:** Adrian A. Duclos (Father) appeals the family court's award of $30,000 in attorney's fees and costs to Karen R. Duclos (Mother) after remand from this court. He argues the family court did not follow this court's mandate on remand of the case. He asserts the fees represent approximately 64% of his annual

income and the family court did not properly consider his ability to pay Mother's fees. We affirm as modified.

Father and Mother divorced after being married for approximately seventeen years and having four children. During the divorce, the parties entered into a settlement agreement giving Mother primary custody of the children.

Several years after the divorce, Father filed a complaint, alleging a substantial change in circumstances and seeking custody of the parties' oldest child. Subsequently, Father filed an amended complaint requesting, inter alia, primary custody of all of the parties' children and attorney's fees and costs. Approximately one year later, the family court entered a temporary order that suspended Father's visitation rights at Mother's request, finding Father was not acting in the three[1] minor children's best interests based on his continued allegations of child abuse and neglect that were deemed unfounded. Father later filed a second amended complaint, in which he reasserted his previous grounds and also alleged additional changes in circumstances.

The family court held a seven-day hearing at which both parties called numerous witnesses. The family court found Father failed to prove a substantial change in circumstances and denied his request for a change in custody. The family court also denied Father's request for attorney's fees,[2] instead ordering him to pay a portion of Mother's attorney's fees.[3]

The family court made findings as to the factors provided by *E.D.M v. T.A.M.*[4] and

---

[1] Because the parties' oldest child became emancipated during the pendency of the action, the issue of a change in custody ultimately involved only the three minor children.

[2] Father requested $28,789.35 in attorney's fees.

[3] Mother requested $46,197.97 in attorney's fees. The family court also ordered Father to pay the guardian ad litem's fees.

[4] *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) (providing a family court should consider the following factors in deciding whether to award attorney's fees: "(1) the party's ability to pay his [or] her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living").

*Glasscock v. Glasscock*.[5]  The court determined Mother achieved beneficial results in the litigation because she retained custody of the minor children.  The court found Mother could not pay her fees without the assistance of her father or current husband because she was not employed outside the home.  The court concluded that because Father unsuccessfully initiated the action and caused the parties to incur almost $88,000 in attorney's fees, he should be responsible for those fees, instead of a third party.  The court noted Father earned $3,975 per month, whereas Mother, a lifelong homemaker, would earn $1,257 per month if the court imputed minimum wage to her.  Further, the court held that as Father was employed and earned three times the amount of income imputed to Mother, he had a greater ability to pay the parties' attorney's fees.  The family court acknowledged Mother enjoyed a comfortable lifestyle based on her current husband's income but concluded her current husband should not be obligated to pay for her attorney's fees in a custody action to which he was not a party.  Further, the court found Father's standard of living would be less impacted by his paying the fees than Mother's would because she relied on her current husband for her daily needs.  The family court focused on Father's continued allegations of educational, medical, and physical neglect, which the court found to be unsubstantiated as confirmed by investigating authorities.  The family court concluded Father's "inability to cooperate and be reasonable" made the case more difficult.  The family court ordered Father to pay $34,864.63[6] of Mother's attorney's fees, in the amount of $5,000 every ninety days.

Father appealed to this court, arguing, inter alia, the family court erred by ordering him to pay $34,864.63 towards Mother's attorney's fees.  This court reversed and remanded the portion of the order concerning attorney's fees.  *Duclos v. Duclos*, Op. No. 2017-UP-354 (S.C. Ct. App. filed Sept. 6, 2017) (per curiam).  This court found Father's financial declaration stated his gross monthly income was $3,975, totaling approximately $47,000 per year but "did not include [Father's] state or federal tax obligations or his child support obligations, which would inevitably increase [his] stated monthly expenses of $3,386."  *Id.*  Additionally, this court

---

[5] *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (holding the family court should consider the following factors in determining a reasonable attorney's fees award: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services").

[6] The award of $34,864.63 in attorney's fees was approximately 75% of Mother's fees.  This did not include prior amounts already paid by Father.

observed that requiring Father "to pay almost $35,000 . . . leaves [him] with little income to pay these expense[s] and represents almost 43% of [his] annual income, exclusive of [his] taxation and support obligations."[7] *Id.* While recognizing Mother succeeded on the custody action, this court determined requiring Father to pay this amount would be inequitable and reversed the attorney's fees award. *Id.* Accordingly, the court remanded the matter "to the family court for a recalculation of the amount of [Mother's] attorney's fees, taking into consideration [Father's] ability to pay." *Id.*

On remand, the family court conducted a hearing to reconsider the amount of attorney's fees awarded to Mother. Following the hearing, the family court issued an order, "reiterate[ing] its findings . . . with respect to attorney's fees as outlined in *Glasscock v. Glasscock*; *Farmer v. Farmer*[8]; *E.D.M. v. TA.M.*." The family court noted although Father's financial declaration stated he pays self-employment tax of $329 per month, he failed to specify what amounts he pays in federal and state taxes but "the amount is listed and was considered by the [family c]ourt in its initial ruling." The family court found Father "has the ability to pay the attorney's fees as ordered herein, as [Father] earns three times the imputed minimum wage income [of] [Mother]. [Father] has incurred attorney's fees in nearly the same amount as [Mother] and has managed to pay the same through his self-employment and other resources." The family court ordered Father to pay $30,000 of Mother's attorney's fees, in monthly increments of $329.

Father filed a motion to alter or amend. He noted the family court did not receive any new evidence or testimony at the hearing on remand. He contended the family court simply reiterated its previous findings from the final order pertaining to attorney's fees and cited *E.D.M.*, *Glasscock*, and *Farmer*. He also stated, "The [family c]ourt further observed that [Father's] financial declaration . . . shows that he pays $329.00 per month in self-employment tax . . . ." Father noted the family court, like this court, observed his financial declaration did not "include the amount

[7] The payment plan required Father to make "approximately $20,000 in payments annually," which is 43% of his annual income. *Duclos*, Op. No. 2017-UP-354 at n.1. The total award, $34,864.63, was about 73% of Father's annual income.
[8] *Farmer v. Farmer*, 388 S.C. 50, 57, 694 S.E.2d 47, 51 (Ct. App. 2010) ("A family court should *first* consider the . . . factors as set forth in *E.D.M. v. T.A.M.*, in deciding *whether* to award attorney's fees and costs . . . . After deciding to award attorney's fees, a family court should then consider the following factors as set forth in *Glasscock* in deciding *how much* to award in attorney's fees and costs . . . ." (citations omitted)).

he pays in state and federal taxes."  However, Father asserted this court had "actually remarked that this would inherently *increase* [his] expenses, which would logically serve to diminish [his] ability to pay [Mother's] fees and thereby decrease any potential fee award."  Father also contended that in the order after remand, the family court made only two new substantive findings—(1) he earns three times the income imputed to Mother and (2) he incurred and managed to pay about the same amount of attorney's fees as Mother.  Father argued neither of these findings warranted the new attorney's fee award, which "remain[ed] unreasonable and excessive" in light of his "income and lack of ability to pay."

Following Father's motion, the family court issued a new order.  The family court determined Father is "gainfully employed," earns $3,975 per month, and has the ability to pay both his and Mother's attorney's fees.  The court also found because Father "is self-employed as an [i]nsurance [a]gent," he "basically controls how diligent or hard, if and whether he works, to some extent."  The court noted Father previously earned $5,000 per month as a real estate agent, upon which his child support obligation was based when the parties divorced.  The court indicated Mother was "a stay at home mom during the parties' marriage," which continued in her present marriage, and "was imputed minimum wage income of $1,257 per month."  The family court determined Mother does not have the ability to pay all of her attorney's fees; she was only able to pay fees and costs during the litigation because her current husband and her father made payments on her behalf.  The family court further observed Mother relies on her husband for her daily needs and found he should not be obligated to pay attorney's fees for Father's frivolous action.

Additionally, the family court found Father "earns three times the amount that [Mother] earns" and "has a greater earning potential and capacity."  The court found Father "has the ability to pay" both Mother's and his attorney's fees.  The court determined that because of the new payment arrangement it was ordering, the attorney's fee award would not impact Father's standard of living and he would "not be forced into poverty."  The court noted Father filed the action, made the litigation "egregiously difficult," incurred a total of $41,730.60 for his own attorney's fees, and "caused nearly $88,000 of fees to be incurred on behalf of both parties."  The court believed "caus[ing] a negative financial impact" to Mother and her husband's standard of living motivated Father to take the actions he did.  The court also determined Mother "obtained beneficial results."

Further, the family court determined Father "incurred attorney's fees in nearly the same amount as" Mother, which he "managed to pay . . . through his self-employment and other resources as testified to at the initial trial in this matter."

The court noted Father pays $329 for monthly self-employment tax but his financial declaration "fails to break down" what amounts he pays to federal and state authorities. The family court recognized that this court had noted Father "has a child support obligation . . . [that] is not listed on his financial declaration and . . . emphasized [that] creates more monthly expenses on his part." But the family court stated, "Assuming arguendo . . . [Father] is credited with additional expenses not listed on his financial declaration, then equitable [sic] based on [Mother's] position to the [c]ourt at the trial in this matter, [Father] is credited as well with the income that supports the expenses not listed." The family court found, "This imputation of income to [Father] would be consistent with his actual earning potential of" $5,000 as Mother presented at the trial. The court further observed that in its "initial ruling, [it] noted that [Father] had other income resources o[n] which he relied[,] which would support him not listing that he actually pays child support on his financial declaration, but rather it is being paid on his behalf by some other source."

Moreover, the family court stated Father's "financial declaration shows a gross and net income of $3,975 after deduction of self-employment taxes" and monthly deductions of $3,386, which leaves Father with $589 per month in available income. The family court observed that in its initial ruling, it ordered Father to make $5,000 payments every ninety days for a total of $34,864.63, whereas it was now ordering him to make monthly payments of $329, totaling $30,000. The court noted the new $30,000 award was approximately two-thirds of Mother's attorney's fees. The family court determined Father has the ability to pay $329 for ninety-one months, instead of a total of $34,864.63 over a period of twenty-one months as it previously ordered. The family court noted the new attorney's fees award gave Father an additional seventy months to fulfill the obligation, "which is more feasible and manageable based on his income and ability" and the new monthly payments would total $3,948 per year, which equals 8.3% of Father's annual income.[9] This appeal followed.

Father argues the family court erred in setting the new attorney's fees award because it did not properly follow this court's mandate on remand and the new award remains excessive given his ability to pay. Father asserts the family court "reiterat[ed] its findings," thus "ignor[ing] the clear mandate of this [c]ourt, which specifically directed the family court to recalculate Mother's attorney fee award by 'taking into consideration [his] ability to pay.'" We agree.

---

[9] The new total amount of the attorney's fees award, $30,000, is about 62.9% of $47,700, Father's yearly income per his financial declaration.

The appellate court reviews decisions of the family court de novo. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence. *Id.* at 391, 709 S.E.2d at 655. "[T]his [c]ourt reviews a family court's award of attorney's fees de novo." *Stone v. Thompson*, 428 S.C. 79, 92, 833 S.E.2d 266, 272 (2019).

In deciding whether to award attorney's fees and costs, a family court should first consider the following factors: "(1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fee on each party's standard of living." *Farmer*, 388 S.C. at 57, 694 S.E.2d at 51. "A party's ability to pay is [an] essential factor in determining whether an attorney's fee should be awarded . . . ." *Sexton v. Sexton*, 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993).

In *Rogers v. Rogers*, the supreme court reversed an attorney's fee award that "represent[ed] approximately 16% of [the m]other's annual income" because in light of "[a] party's ability to pay[,]. . . the parties' respective financial conditions[,] and the effect of the award on each party's standard of living," the award was excessive. 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001). In *Srivastava v. Srivastava*, this court found the family court erred in awarding the husband attorney's fees that equaled about 90% of the wife's income, when the husband's annual income was "substantially higher" than the wife's. 411 S.C. 481, 488-90, 769 S.E.2d 442, 447-48 (Ct. App. 2015). This court noted that like in *Rogers*, it was "compar[ing] the award of attorney's fees to [the w]ife's annual income." *Id.* at 490, 769 S.E.2d at 447. This court found "although the family court generally referenced the *E.D.M.* factors, the income-to-attorney's fees ratio makes it apparent that the family court did not sufficiently consider each party's ability to pay, their respective financial conditions, and the effect of the award on each party's standard of living." *Id.* This court remanded the matter to the family court to fully consider the *E.D.M.* factors in deciding whether to award attorney's fees to either party. *Id.* at 491, 769 S.E.2d at 448.

Most recently, in *Glinyanay v. Tobias*, this court reversed the family court's order requiring the father pay a third of the mother's attorney's fees despite her having received beneficial results. 436 S.C. 137, 151-52, 871 S.E.2d 193, 201 (Ct. App. 2022). This court noted, "While [the m]other has additional financial burdens as she has three children from her current marriage and pays . . . for health insurance for all of her children, she also has a husband who contributes to their household's

income." *Id.* This court recognized the mother earns over three times more than the father and determined, "Based on their respective financial conditions, we find [the m]other is better able to pay her attorney's fees than [the f]ather. Forcing [the f]ather to pay his own attorney's fees . . . as well as [part] of [the m]other's would severely impact his financial condition." *Id.*

In *Spreeuw v. Barker*, this court found the family court did not err in an attorney's fees award to the mother, despite the father's argument the award was "excessive in light of his income." 385 S.C. 45, 72, 682 S.E.2d 843, 856-57 (Ct. App. 2009). In making this decision, this court stated, "Typically, we would be very concerned by an award of attorney's fees representing approximately 40% of [a party's] annual income" but recognized that in that case, the family court had based the award on the "[f]ather's uncooperative conduct in discovery and his evasiveness in answering questions with respect to his financial situation," in addition to the factors set forth in *Glasscock. Id.* at 72, 682 S.E.2d at 857.

In the present case, the family court initially ordered Father to pay approximately 75% of Mother's attorney's fees, focusing on Father's unsuccessful efforts to gain custody of the children. On remand, instead of considering Father's ability to pay Mother's attorney's fees as this court ordered, the family court concentrated on the fact that Mother had no income of her own and its belief that Father had ulterior motives in these proceedings as well as more income than he indicated in his financial declaration. Although the family court did not require Father to pay the entire award of $30,000 in one year, the entire award is almost 63% of Father's annual income per his financial declaration. Under our de novo review, we find the family court did not sufficiently take into account Father's ability to pay Mother's attorney's fees. Accordingly, we reduce Father's obligation for Mother's attorney's fees to a total amount of $12,000, which is approximately 25% of Father's yearly income, to be paid at the rate of $500 per month for a period of twenty-four months,[10] beginning thirty days after the remittitur is sent.

**AFFIRMED AS MODIFIED.**

**KONDUROS, HILL, and HEWITT, JJ., concur.**

---

[10] Under this new payment plan, the amount Father is responsible for paying in one year is about 12.6% of his annual income as provided by his financial declaration.